UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10254-GAO

ARRUDA & BEAUDOIN, LLP d/b/a SOCIAL SECURITY LAW GROUP, TRACEY
ROBINSON, DAVID BUTTERWORTH, CHRISTINA BROOKS, MICHAEL SHIELDS, and
MATTHEW FRIEDMAN,
individually and on behalf of similarly situated individuals,
Plaintiffs,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, and
THE SOCIAL SECURITY ADMINISTRATION,
Defendants.

OPINION AND ORDER
March 27, 2013

O'TOOLE, D.J.

I have reviewed the magistrate judge's Report and Recommendation, the underlying

pleadings, motion, and supporting documents, and the plaintiffs' objection to the Report and

Recommendation. Having conducted this review I conclude that the magistrate judge is correct

in all respects but two. First, I do not accept her recommendation to dismiss the individual

Privacy Act claims of Tracey Robinson, Christina Brooks, and Matthew Friedman. I think the

claims are sufficiently pled for Rule 12(b)(6) purposes; whether they are meritorious can be

determined after a fuller development of a factual record. Second, the magistrate judge did not

recommend any action with regard to Count II (declaratory judgment) and Count III (equitable

relief). Those sections simply seek particular remedies for substantive wrongs alleged in other

counts. Since, with the exception of the individual Privacy Act claims, the substantive counts

will be dismissed, there is no reason not to dismiss the related remedial counts as well. The

individual plaintiffs' remedies, if any, are available under the Privacy Act only.

Accordingly, subject to those reservations, I ADOPT all other aspects of the magistrate judge's recommendations for the reasons outlined in the Report and Recommendation. Accordingly, the defendants' Motion (dkt. no. 20) to Dismiss is GRANTED as to all claims except the Privacy Act claims by the individual plaintiffs set forth in Count I of the Amended Complaint.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARRUDA & BEAUDOIN, LLP<br>d/b/a SOCIAL SECURITY LAW GROUP,<br>TRACEY ROBINSON, DAVID BUTTERWORTH,<br>CHRISTINA BROOKS, MICHAEL SHIELDS, and<br>MATTHEW FRIEDMAN,<br>individually and on behalf of similarly situated<br>individuals,<br>　　　　　　Plaintiffs,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner, Social<br>Security Administration, and THE SOCIAL<br>SECURITY ADMINISTRATION<br><br>　　　　　　Defendants. | Civil Action No. 11-10254-GAO |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

[Docket No. 20]

March 15, 2012

Boal, M.J.

**I.    Introduction**

Arruda & Beaudoin, LLP d/b/a Social Security Law Group ("SSLG"), Tracey Robinson,

David Butterworth, Christina Brooks, Michael Shields and Matthew Friedman (collectively,

"Plaintiffs") bring this action against Michael Astrue, Commissioner of the Social Security

Administration (the "SSA"), and the SSA alleging violations of the Privacy Act (Count I), the

Administrative Procedures Act (Count IV), the Equal Protection Clause of the U.S. Constitution

(Count VI), and the Due Process Clause of the U.S. Constitution (Count VII).  Amended

1

Complaint, Docket No. 27.  Plaintiffs seek damages, as well as a declaratory judgment (Count

II), equitable relief (Count III), a writ of mandamus (Count V), and class certification.  Id.

SSLG is a law firm that specializes in social security claims and represents clients before

the SSA across the United States.  Amended Complaint, ¶ 24.  Plaintiffs allege that since

SSLG's inception in 1994, SSA field offices have routinely allowed SSLG to submit volume

requests for "queries,"[1] or printouts of SSA database information.  Id. at ¶¶ 63-65.  SSLG alleges

that it must obtain these queries in order to effectively service its commercial clients and to

monitor its individual client's requests for benefits.  Id. at ¶ 30.  SSLG alleges that the SSA has

ceased fulfilling SSLG's volume requests for queries while still fulfilling the volume requests of

its competitors.  Id. at ¶ 69, 96-99.  SSLG alleges that such action not only violates the

individual claimants' rights to access their information under the Privacy Act, it also violates the

Equal Protection and Due Process Clauses of the U.S. Constitution because the SSA is treating

SSLG and its clients differently than SSLG's competitors and their clients.  Id. at ¶¶ 137, 140.

SSLG alleges that such action has had serious negative effects on SSLG's business and its ability

to represent its clients.  See e.g., Id. at ¶¶ 79, 94, 121.

Defendants have filed a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the

Federal Rules of Civil Procedure.  Docket No. 20.  Defendants argue that Plaintiffs' claims should

be dismissed because this Court lacks subject matter jurisdiction over most, if not all, of

Plaintiffs' claims and, in any event, the allegations of the Amended Complaint fail to state a claim

for relief.  See Docket Nos. 21, 33.  For the reasons discussed herein, this Court recommends that

---

[1] Specifically, the Amended Complaint references the following queries: Summary of
Quarterly Earnings Queries ("SEQY"); Disability Determination Services Queries ("DDSQ");
and Master Beneficiary Report Queries ("MBR").  Amended Complaint, ¶¶ 30, 36, 42, 49.

the District Court grant in part and deny in part the Defendants' motion to dismiss.

## II.     Procedural History

On February 15, 2011, Plaintiffs filed their Complaint and separately filed a motion seeking a preliminary injunction mandating that SSA process and release information concerning SSLG's clients. Docket Nos. 1, 3. The Defendants subsequently opposed the motion and moved to dismiss the Complaint. Docket Nos. 14, 20. On September 30, 2011, the District Court denied Plaintiffs' motion for an injunction without prejudice and referred the Defendants' motion to dismiss to this Court for a report and recommendation. Docket No. 26; Electronic Order September 30, 2011.

This Court scheduled a hearing on the motion to dismiss for November 30, 2011. On November 2, 2011, Plaintiffs filed an Amended Complaint.[2] Docket No. 27. In light of, inter alia, the Plaintiffs' filing of the Amended Complaint, the Court held a status conference on November 16, 2011. After the status conference, the Court issued a briefing schedule to allow the parties to address the Amended Complaint. Docket No. 29. On December 14, 2011, the Defendants filed a supplemental memorandum in support of their motion to dismiss, which

---

[2] The Amended Complaint adds Equal Protection and Due Process claims, removes the 42 U.S.C. § 1983 and FOIA claims, and adds and removes named plaintiffs. Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course within 21 days after serving the original complaint or, inter alia, 21 days after service of a motion under Rule 12(b), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading with the other party's consent or leave of court. Fed. R. Civ. P. 15(a)(2). A Court should "freely give leave [to amend] when justice so requires." Id. Here, Plaintiffs filed their Amended Complaint well after the Defendants filed their Rule 12(b) motion, and did so without Defendants' consent or leave of court. In the interest of judicial economy and because, as stated at the November 16, 2011 conference, the Defendants do not oppose the amendment, the Court will consider the Amended Complaint as the operative pleading in this matter.

Plaintiffs opposed on January 4, 2012.  Docket Nos. 31, 32.  The Court held a hearing on the

motion to dismiss on January 18, 2012.

**III.    Factual Allegations**[3]

The SSA is a federal agency that administers social security insurance programs,

including the social security disability insurance ("SSDI"), a monthly wage replacement benefit

to individuals who can no longer work, and supplemental security income ("SSI"), a cash

assistance program that makes monthly payments to people who have low income and are age 65

or older, blind, or disabled.  Amended Complaint, ¶ 22.  The SSA, in the course of administering

its various programs, compiles and stores information in a system of records that contains an

individual's earnings information, claims information, and benefits information.  Id. at ¶ 23.

Established in 1994, SSLG is a law firm that specializes in representing individuals with

their SSDI and SSI claims.  Id. at ¶ 24.  SSLG represents approximately 3,500 individuals in all

50 states and Puerto Rico.  Id.  SSLG asserts that it is critical to periodically obtain SEQY,

DDSQ, and MBR queries from the SSA in order to adequately represent its clients.  Id. at ¶¶ 25,

29, 30.

SSLG's clients execute consent forms authorizing SSLG to obtain the queries directly

from SSA.  Id. at ¶ 34.  As a matter of course, SSLG has its clients execute Form SSA-1696, the

Appointment of Representative Form, which not only designates SSLG as a claimant's appointed

representative in a claim for SSI and/or SSDI, but also explicitly authorizes SSLG to "make any

---

[3] The facts are derived from the Amended Complaint.  The Court takes as true all well-pleaded allegations and draws all reasonable inferences in Plaintiffs' favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008); Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).

request or give any notice, give or draw out evidence or information, get information, and receive

any notice in connection with [a client's] pending claim(s) or asserted right(s)." Id.

    A.    SEQY

SSLG alleges that the SEQY query is important because it provides detailed earnings data

that allows it to determine if a potential claimant made the requisite contributions to qualify him

or her to receive SSDI benefits. Id. at ¶ 36. In SSLG's experience, scores of potential claimants

lack the sufficient contributions to qualify, or have significant gaps in their earnings history that

adversely affect their benefits or dates of insurability. Id. at ¶ 37. Upon receiving the SEQY

query, SSLG asserts that it can make a determination if it is worthwhile to prepare an SSDI claim.

Id. After reviewing the results of a SEQY query, the SSLG often determines that the SSA has

incorrect data regarding contributions and that the SEQY needs to be corrected so that the SSA

does not wrongly deny a claim for lack of earnings. Id. at ¶ 38-39. SSLG alleges that the SEQY

contains information that is not typically provided by the field offices or the SSA's toll free

number. Id. at ¶ 41.

    B.    DDSQ

SSLG alleges that it also routinely needs DDSQ queries to determine the status of its

clients' claims. Id. at ¶ 42. The information provided in a DDSQ is critical to effectively

representing a claimant because the award or denial of a claim triggers certain deadlines. Id.

SSLG argues it is often not timely notified (or notified at all) by the SSA of a benefit

determination. Id. at ¶ 43. By periodically seeking a DDSQ, SSLG alleges that it can monitor the

status of a claim and more quickly advance its consideration. Id. at ¶ 44. SSLG alleges that the

DDSQ contains information that is not readily obtainable from the SSA other than from a records

request. Id. at ¶ 48.

    C.    <u>MBR</u>

Once a claim has been approved, SSLG claims that it needs an MBR to confirm that its clients have been paid the proper amounts and that SSA has properly withheld attorney fees. Id. at ¶ 49. MBR queries provide information regarding the aggregate amount of benefit payments, repayments or reductions with respect to an individual in a calendar year, and information about the claimant's eligible dependents. Id. In reviewing MBRs, SSLG alleges that it will often find errors that affect either the amount of benefits to be received by the client and/or their dependents or the amount of SSLG's fees. Id. at ¶ 50. Specifically, a data entry error can cause an individual to be significantly overpaid, underpaid, or greatly delay payment of benefits. Id. SSLG alleges that an MBR is essentially useless if it is not timely provided because a claimant's status is constantly changing, and a query must be requested several times and at various intervals to effectively detect and resolve potential issues and errors. Id. at ¶ 57. Further, SSLG alleges that the information in a MBR is not typically provided by field offices, is never provided telephonically, and the MBR itself is the only source concerning a claimant's payment information. Id. at ¶ 56.

    D.    <u>SSLG's Relationships With Insurers</u>

SSLG provides verification services for long-term disability insurers with respect to the SSA. Id. at ¶ 58. These insurers issue and underwrite long term disability plans which may require their insureds to pursue SSDI claims that may offset the amounts the insurers need to pay. Id. The insureds often execute an SSA consent form, Form-3288, authorizing the insurer or its authorized designee to obtain this information directly from SSA. Id. at ¶ 61. Although SSLG is

not officially representing the individual insured, through these third party requests it will act as the insurer's authorized designee in obtaining claim information from SSA, which then enables the insurer to monitor claims and coordinate its payments in accordance with plan provisions. Id. at ¶¶ 59, 60.

E.    SSLG's Previous Receipt Of Queries

Since its inception in 1994, SSLG alleges that it would at regular weekly intervals submit large volume written requests (concerning approximately 900 claimants) to either the Boston (originally), Hanover (1996-2008), or Brockton (2008-2010) SSA field offices for SEQY, DDSQ, and MBR queries. Id. at ¶ 63. SSLG alleges that it would also submit with its requests the appropriately executed consent forms, including Form 1696 for its represented clients, and any other requested information in order to process the requests. Id. SSLG alleges that it utilized the field offices in the Boston Region because those offices were physically proximate to its own home office, which allowed it to more efficiently submit and receive the requests. Id. The SSA, through its Boston, Brockton or Hanover field offices, would regularly, timely, and adequately fulfill each of SSLG's requests for information and provide its clients' SEQY, DDSQ, and MBR queries, regardless of their residence or the field office servicing any individual client's residential zip code. Id. at ¶ 64.

Up until about April 2010, SSLG alleges it would tender SSA the executed form SSA-3288 or equivalent as its authorization, and the SSA, through its Boston area field offices, would regularly and timely and adequately fulfill and respond to each of SSLG's third party requests. Id. at ¶ 65.

SSLG alleges that the SSA's timely processing and fulfillment of SSLG's volume requests

for SEQY, DDSQ, MBR queries and third party requests through its Boston area field offices was a reasonable and efficient system by which SSLG was able to timely receive earnings and claims information that was critical for it to effectively represent its clients and maintain and promote its commercial service offerings. Id. at ¶ 66.

      F.    <u>SSA Ceases To Provide Queries</u>

In response to a volume request, the Brockton Field Office orally notified SSLG on or about April 1, 2010 that it would no longer be able to submit volume third party requests and that SSLG would have to make a separate request to the particular SSA field office servicing each claim in which an inquiry has been made. Id. at ¶¶ 71-72. The SSA based its decision on POMS[4] 3305.004, which requires third party requesters to seek information from the field office servicing the individual's zip code. Id. at ¶ 71. SSLG alleges that this response to SSLG's request constitutes a constructive denial to provide information and an improper withholding of agency records. Id. at ¶ 72.

Since receiving the SSA's April 1, 2010 refusal, SSLG asserts it has attempted to comply with the SSA's new requirements, but alleges that the process has been unacceptably onerous and has "proven tantamount" to a constructive denial to provide information. Id. at ¶ 74. SSLG, by letters dated May 5, May 20, June 21, and July 19, 2010, as well as by other communications, has challenged and appealed the SSA's April 1, 2010 refusal. Id. at ¶ 73.

On August 31, 2010, the SSA, through its respective Brockton and Boston field offices, ceased fulfillment of SSLG's volume requests for SEQY, DDSQ, and MBRs. Id. at ¶ 80. The

---

    [4] POMS, or Program Operations Manual System, is the SSA's internal program instruction manual. Id. at ¶ 70.

SSA based its decision on POMS 00904.048, which requires third party requesters to seek information from the field office servicing the individual's zip code. Id. at ¶ 81. In response, SSLG began sending direct requests for printed queries to the respective field offices of its clients nationwide, and attached the appropriate form SSA-1696 for authorization. Id. at ¶ 83. As with third party requests, SSLG documented to the Boston Regional Office examples of a pervasive lack of consistency and uniformity within SSA Field Offices regarding refusal to release queries, onerous procedural requirements, and unconscionable fees. Id.

### G.    Effects On SSLG And Individual Plaintiffs

SSLG alleges that SSA's refusal to fulfill SSLG's volume query and third party requests has damaged its ability to effectively represent its clients and its relationships with its long-term disability insurance clients. Id. at ¶¶ 79, 94. SSLG alleges that its industry competitors located within other SSA Regions continue to customarily and regularly make volume requests, and receive volume SEQY, DDSQ, and MBR queries on behalf of all of their clients using the SSA-1696 and SSA-3288 forms as authorization. Id. at ¶¶ 69, 96. SSLG alleges that SSA has steadily supplied competitors Allsup, Inc. and The Advocator Group with volume queries and continues to do so. Id. at ¶¶ 97-100.

The individual Plaintiffs are current clients of SSLG who allege that they have been denied access to their SSA queries. Id. at ¶¶ 2-6. Ms. Robinson and Mr. Friedman allege that they were denied access to their DDSQs. Id. at ¶¶ 90, 91. Mr. Butterworth and Mr. Shields allege that they were denied access to their MBRs. Id. at ¶¶ 84, 89. Ms. Brooks alleges that the SSA significantly overpaid her because she was unable to obtain her MBR and therefore monitor her claim. Id. at ¶ 51.

IV.     **Statutory and Regulatory Background**

    A.     Privacy Act

Plaintiffs allege that the SSA violated the Privacy Act, 5 U.S.C. § 552a, by wrongfully

withholding agency records.  Specifically, Plaintiffs allege that SSA failed to provide the

requested queries and/or comply with the statutory time frame for the processing of Privacy Act

requests.  Amended Complaint, ¶ 113.  Plaintiffs seek damages and injunctive relief for the

alleged violations.

    Under its so-called access provisions, the Privacy Act requires a federal agency to allow

an individual access to the records about that individual kept in an agency's system of records.

5 U.S.C. § 552a(d)(1).  The Privacy Act defines "record" as "any item, collection, or grouping of

information about an individual that is maintained by an agency, including, but not limited to, his

education, financial transactions, medical history, and criminal or employment history and that

contains his name, or the identifying number, symbol, or other identifying particular assigned to

the individual, such as a finger or voice print or a photograph."  5 U.S.C. § 552a(a)(4).  A "system

of records" is defined as "a group of any records under the control of any agency from which

information is retrieved by the name of the individual or by some identifying number, symbol, or

other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).

    Upon request, an agency that maintains a system of records must permit an individual and

"a person of his own choosing to accompany him," to review the record and "have a copy made

of all or any portion thereof in a form comprehensible to him."  5 U.S.C. § 552a(d)(1).  The

agency may require the individual to furnish a written statement authorizing discussion of that

individual's record in the accompanying person's presence.  Id.

1.    Social Security Regulations

a.    Request for Records

The Social Security Administration has enacted regulations regarding its disclosure of records and information under the Privacy Act. See 20 C.F.R. §§ 401.30 et. seq. An individual may ask for "access to any record about [himself] that is in an SSA system of records." 20 C.F.R. § 401.40(a). The regulations state that at the time of the record request, the individual must specify which system of records he wishes to have searched and the records to which he wishes to have access. 20 C.F.R. § 401.40(b). The individual may also request copies of his records. Id.

In order to request access to a record, the individual may visit his local social security office or write to the manager of SSA records. 20 C.F.R. § 401.40(c). The individual does not need to use a "special form" to ask for a record in the SSA files, but the request must provide enough identifying information about the record to enable the SSA to locate the particular record. Id. The required information includes the system of records in which the record is located and the name and social security number under which the record is filed. Id. The regulations state that the SSA does not "honor requests for all records, all information, or similar blanket requests." Id. Upon receipt of a request for a record and verification of the individual's identity, the SSA reviews the request and grants access to the record, if the individual is the subject of a record. 20 C.F.R. § 401.50.

b.    Administrative Remedies

An individual may appeal the SSA's denial of a request for access to records. 20 C.F.R. § 401.70(c). The regulations require that the SSA advise the individual in writing of the reason for the denial, the name or person of the person responsible for the decision and the individuals'

11

right to appeal that decision. Id. The individual may appeal the denial to the Executive Director

for the Office of Public Disclosure within, inter alia, 30 days after receiving notice denying the

request. Id. Within 30 working days, the Executive Director will typically review the appeal and

send a notice explaining the decision on the appeal and the individual's right to have the matter

reviewed in federal district court. 20 C.F.R. § 401.70(d). Here, Plaintiffs allege that they

exhausted their administrative remedies.[5] Amended Complaint, ¶ 115.

## V. Analysis

### A. Standards of Review

Defendants have moved to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim.

The Court will discuss the appropriate standard of review in turn.

In reviewing a motion to dismiss under Rule 12(b)(1), a court must credit the plaintiff's

well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor.

Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010); Murphy v. United States, 45 F.3d

520, 522 (1st Cir. 1995). However, the plaintiff bears the burden of establishing that the Court

has jurisdiction over the claims. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

---

[5] The Defendants have not challenged that assertion.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 129 S.Ct. at 1950.

B.    Scope Of The Record

Both parties attach documents to their briefs or seek judicial notice of information. Specifically, Plaintiffs seek judicial notice of news reports regarding requests for disability benefits. Docket No. 32, p. 2. The Defendants attach affidavits by several SSA personnel. Docket No. 21, Exhibits 1-4.

The Court may consider matters outside of the pleadings in deciding a Rule 12(b)(1) motion. Gonzalez v. United States, 284 F. 3d 281, 288 (1st Cir. 2002); Doucot v. IDS Scheer, Inc., 734 F. Supp. 2d 172, 177 n.3 (D. Mass. 2010). Here, the Defendants have argued explicitly that the Amended Complaint should be dismissed for lack of subject matter jurisdiction on the

basis that (1) 42 U.S.C. § 405(h) deprives the court of subject matter jurisdiction and (2) the

Court lacks jurisdiction over the APA claim.  The Plaintiffs' documents are not relevant to this

Court's decision on either argument and therefore the Court declines to consider them.  The

Defendants' affidavits are potentially relevant to their APA arguments and the merits of that

claim, but, as described herein, the Court is able to rule on the APA claim without consideration

of these documents.

In considering the merits of a motion to dismiss pursuant to Rule 12(b)(6), the Court may

look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by

reference in the complaint and matters of which judicial notice can be taken.  Nollet v. Justices of

the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir.

2000).  Courts have made narrow exceptions for documents the authenticity of which are not

disputed by the parties, for official public records, for documents central to plaintiffs' claim or for

documents sufficiently referred to in the complaint.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir.

1993).  Consideration of other materials is generally forbidden unless the motion is properly

converted into one for summary judgment.  Id.  None of the proposed documents or information

meets these exceptions.  Accordingly, the Court will not consider the news reports or affidavits

for purposes of deciding the Rule 12(b)(6) component of Defendants' motion to dismiss.

C.      Section 405(h) Of The Social Security Act Does Not Bar Plaintiffs' Claims

The Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs'

claims.  Specifically, Defendants state that Plaintiffs' claims are intertwined with SSA's

processing of their Social Security claims and that, pursuant to 42 U.S.C. § 405(h), are barred

from this Court's review.  Docket No. 31, p. 3-5.  Plaintiffs argue that Section 405(h) does not

deprive this Court of jurisdiction because their claims are separate and independent from their receipt of benefits. Docket No. 32, p. 5-7.

Section 405(h) states, in relevant part, that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28, United States Code to recover on any claim arising under this title." 42 U.S.C. § 405(h). Thus Section 405(h) bars any claim based on federal question jurisdiction "arising under" the Social Security Act.

Plaintiffs' claims, however, do not arise under the Social Security Act. Although Plaintiffs are Social Security beneficiaries, their claims pertain to access to their information, not to their receipt of benefits. This is not a case where the Social Security Act provides "both the standing and the substantive basis" for Plaintiffs' claims. Weinberger v. Salfi, 422 U.S. 749, 760-761 (U.S. 1975). Accordingly, the Court finds that Section 405(h) does not bar this Court's consideration of Plaintiffs' claims.

      D.     SSLG's Standing

The Defendants argue that SSLG lacks standing to bring suit. Docket No. 21, p. 11; Docket No. 31, p. 9-11. SSLG argues that it has standing in its own right, as a third party, or because it is in the "zone of interest" protected by the Privacy Act. Docket No. 22, p. 10, 17-20; Docket No. 32, 15-19.

Article III of the U.S. Constitution confines courts to the adjudication of "cases or controversies." Allen v. Wright, 468 U.S. 737, 750 (1984). To satisfy this requirement, SSLG "must show (1) that [it] ha[s] suffered an injury in fact, (2) that the injury is fairly traceable to the [defendant's] allegedly unlawful actions, and (3) that 'it [is] likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision.'" Nulankeyutmonen

Nkihtaqmikon v. Impson, 503 F.3d 18, 26 (1st Cir. 2007) (quoting Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560-61 (1992)). The Supreme Court has also created so-called prudential

limitations on standing, including "the general prohibition on a litigant's raising another person's

legal rights, the rule barring adjudication of generalized grievances more appropriately addressed

in the representative branches, and the requirement that a plaintiff's complaint fall within the zone

of interests protected by the law invoked." Allen, 468 U.S. at 751. As opposed to constitutional

standing, Congress may override prudential limits by statute. Bennett v. Spear, 520 U.S. 154, 162

(1997).

    As Plaintiffs correctly point out, the Defendants do not seriously contest the constitutional

basis for SSLG's standing. Docket No. 32, p. 13. Thus, the Court will determine whether SSLG

has prudential standing to pursue its Privacy Act, APA, and constitutional claims. SSLG argues

that is has three types of interests: (1) an interest on behalf of its individual clients who seek

social security benefits; (2) an interest on behalf of its corporate clients; and (3) its own economic

interest in providing a record-acquisition service.

    1.    SSLG's Standing To Pursue Its Individual and Corporate Clients' Interests

    A party "generally must assert his own legal rights and interests, and cannot rest his claim

to relief on the legal rights or interest of third parties." Kowalski v. Tesmer, 543 U.S. 125, 129

(2004) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). This rule is not absolute however.

Powers v. Ohio, 499 U.S. 400, 410 (1991). A litigant seeking to assert the rights of a third party

may do so if he satisfies three criteria: (1) the litigant must have suffered an injury in fact; (2) the

litigant must have a close relationship to the third party; and (3) "there must exist some hindrance

to the third party's ability to protect his or her own interests." Id. at 411. In order to establish a hindrance, a party must show that "some barrier or practical obstacle (e.g., third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest." Benjamin v. Aroostook Medical Center, Inc., 57 F.3d 101, 106 (1st Cir. 1995) (and cases cited).

SSLG argues that a hindrance exists to its individual clients' ability to protect their interests "due to the difficulty encountered by a layperson requesting and obtaining records from the SSA" as well as challenging SSA procedures. Docket No. 22, p. 19. This is not the type of hindrance sufficient to allow SSLG to assert its client's rights. For example, SSLG's assertion that its individual clients are hindered is belied by the fact that some of SSLG's individual clients are named parties in this action. See Coggeshall v. Mass. Bd. Of Registration of Psychologists, 604 F.3d 658, 667 (1st Cir. 2010) (individual pursued own interest in litigation); Benjamin, 57 F.3d. at 106 (same).

Aside from the alleged difficulty in requesting records, SSLG has not identified a hindrance that its commercial clients would face in asserting their own interests. In any event, this difficulty is not the type of "daunting" and "insurmountable" barriers sufficient to contravene the premise that "the party actually [injured] is both best suited to challenge[] the statute and available to undertake that task." Miller v. Albright, 523 U.S. 420, 450 (1998) (O'Connor, J. concurring).[6] Accordingly, the Court finds that SSLG does not have third party standing to

---

[6] SSLG correctly notes that the Supreme Court has allowed standing to litigate the rights of third parties "when enforcement to the challenged restriction against the litigant would result indirectly in the violation of a third parties' rights." Docket No. 22, p. 17, citing Warth v. Seldin, 422 U.S. 490, 510 (1975). However, the cases SSLG cites in support of its position, Department of Labor v. Triplett, 494 U.S. 715 (1990), and Caplin & Drysdale, Chartered v.

pursue the individual Plaintiffs' claims or that of its corporate clients.

### 2. SSLG's Standing To Pursue Its Economic Interests

With respect to its own economic interests, the Court analyzes SSLG's standing with respect to the Privacy Act, APA, and constitutional claims.

#### a. Privacy Act

Irrespective of whether SSLG has constitutional and prudential standing to pursue a Privacy Act claim, it is unable to override the statutory limitation on standing contained in the Privacy Act. The Defendants argue that SSLG cannot assert a direct claim under the Privacy Act. Docket No. 21 at 10. Rather, they argue only individuals, not a third party representative, may assert rights under the Privacy Act. Id. This Court agrees.

The Privacy Act allows "individuals" to request their records or bring an action against the agency for failure to produce the records. The Privacy Act defines an "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2); 20 C.F.R. § 401.25. The term "individual" does not include partnerships or corporations. 20 C.F.R. § 401.25; SAE Productions. Inc. v. FBI, 589 F. Supp. 2d 76, 83 (D.D.C. 2008); Dresser Indus. v. United States, 596 F.2d 1231, 1237-8 (5th Cir. 1979); see also American Fed. of Gov't Employees v. Hawley, 543 F. Supp. 2d 44, 49 n. 8 (D.D.C. 2008) (only individuals

---

United States, 491 U.S. 617 (1989) are factually distinguishable. In Triplett, the central issue was a fee arrangement between a claimant for black lung disease benefits and his lawyer. In finding that the lawyer had standing to challenge restrictions to the fee arrangement, the Supreme Court determined that the lawyer had a representative interest because the restriction interfered with the claimant's due process right to representation. 494 U.S. at 720. In Caplin, the government sought forfeiture of funds held in a lawyer's bank account as payment for services rendered for a defendant in a criminal case. The Supreme Court held that the law firm had standing because it was credibly alleged that the forfeiture statute at issue impaired the defendant's Sixth Amendment rights. 491 U.S. at 623 n.3.

have standing to bring Privacy Act claims); <u>Lorenzo v. United States</u>, 719 F. Supp. 2d 1208, 1216 (S.D. Cal. 2010) (only the individual identified in the record can state a Privacy Act claim).

SSLG alleges that is it a "limited liability partnership." Amended Complaint, ¶ 1. Accordingly, SSLG is not an individual under the Privacy Act. Therefore, SSLG cannot assert a direct Privacy Act claim.

b.    Administrative Procedures Act

SSLG also asserts it has standing to assert its own interests under the APA. In this regard, SSLG argues that it has standing to seek relief because it is in the zone of interests contemplated by the Privacy Act and that it is also a "suitable challenger." Docket No. 22, p. 16; Docket No. 32, p. 17.[7] The SSA argues that SSLG is not within the zone of interests in the Privacy Act and that it is attempting to attach its claim of entitlement to volume requests for SSA queries to the rights of the individuals whom it represents. Docket No. 31, p. 10. Although SSLG concedes that the Privacy Act "was primarily meant to protect the privacy interests of individuals to whom the records pertain" it asserts that its procedural interests, which it argues are affected by the SSA's refusal to comply with SSLG's volume requests, are among the interests sought to be protected by the statute. Docket No. 32, p. 17.

The "zone of interest" test is "a guide for deciding whether, in view of Congress's evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision." <u>Nulankeyutmonen Nkihtaqmikon</u>, 503 F.3d at 29

---

[7] Professor Erwin Chemerinsky presents the argument that the "zone of interests" test is an additional standing requirement only in cases seeking review of agency decisions under the APA. <u>See</u> Cherminsky, Federal Jurisdiction § 2.3.6 at 105 (5th Ed. 2007) (citing <u>Clarke v. Sec. Indus. Ass'n</u>, 479 U.S. 388, 400 n. 16 (1987)).

19

(quoting <u>Clarke v. Sec. Indus. Ass'n</u>, 479 U.S. 388, 399 (1987)).  The zone of interest test "is not meant to be especially demanding."  <u>Id.</u> at 30.  When a plaintiff is not the subject of regulatory action, "prudential standing requirements may be satisfied so long as the plaintiff's interests are not so marginally related to or inconsistent with the purposes implicit in the statute that it cannot be reasonably be assumed that Congress intended to permit the suit."  <u>Id.</u> (internal quotation marks omitted).  In applying the zone of interests test, the Court "do[es] not ask whether, in enacting the statutory provision at issue, Congress specifically intended to benefit the plaintiff."  <u>Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.</u>, 522 U.S. 479, 492 (1998).  "Instead, we first discern the interests 'arguably . . . to be protected' by the statutory provision at issue; we then inquire whether the plaintiff's interests affected by the agency action in question are among them."  <u>Id.</u>

Although SSLG correctly asserts that courts have allowed parties not specifically named in a statute to sue for injuries allegedly sustained for a violation of that statute, this action is not such a case.  Congress enacted the Privacy Act "to provide certain safeguards for an individual against an invasion of personal privacy by requiring governmental agencies to maintain accurate records and providing individuals with more control over the gathering, dissemination, and accuracy of agency information about themselves."  <u>Bechhoefer v. United States Dep't. of Justice</u>, 209 F.3d 57, 59 (2nd Cir. 2000) (internal quotation marks and citation omitted).  SSLG's desire for volume requests for beneficiary information and its accompanying commercial interests are only marginally related to this purpose.

In <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871 (1990), the Supreme Court used a hypothetical to define the limits of standing under the APA:

> . . . for example, the failure of an agency to comply with a statutory provision requiring "on the record" hearings will assuredly have an adverse effect upon the company that has the contract to record and transcribe the agency's proceedings; but since the provision was obviously enacted to protect the interests of the parties to the proceedings and not those of the reporters, that company would not be "adversely affected within the meaning" of the statute.

497 U.S. at 883. SSLG is in a similar situation to that of the transcription company in the hypothetical above. Although SSLG's commercial interests are injured by the SSA's decision to no longer fill its volume requests,[8] the Privacy Act was not enacted to protect such interests. Accordingly, the Court finds that SSLG's commercial interest is not the type "arguably protected" by the Privacy Act and therefore does not have standing to assert claims under the APA.

      c.    <u>Constitutional Claims</u>

The parties do not precisely address whether SSLG has standing to bring constitutional claims. The Defendants argue that all of SSLG's claims should be dismissed for lack of standing. Docket No. 31 at 10. SSLG focuses its argument on standing with respect to the Privacy Act and the APA claims. This Court finds that SSLG has standing to present the constitutional claims in its own right. SSLG's allegations that it suffered economic harm as a direct and proximate result of the Defendants' conduct satisfies the criteria for standing to present its constitutional claims. See, e.g., Amended Complaint, ¶ 79.

    E.    <u>Privacy Act Claims</u>

      1.    <u>SSA Commissioner Is Not A Proper Party Under The Privacy Act</u>

The Defendants argue that SSA Commissioner Michael Astrue is not a proper party to the

---

[8] SSLG also argues "zone of interest" standing because SSA regulations allow for representatives to obtain information from SSA. See Docket No. 32, p. 17. However, that regulation's purpose is for the benefit of the SSA claimants, and not for the commercial benefit of the representative.

Privacy Act claims.  Docket No. 21, p. 6.  The Privacy Act authorizes a suit against an agency

only.  5 U.S.C. § 552a(g)(1).  The term "agency" is defined in Section 552a(a)(1) and that

definition excludes individual officers and employees.  5 U.S.C. §552a(a)(1); Parks v. Internal

Revenue Service, 618 F.2d 677, 684 (10th Cir. 1980); Brown-Bey v. United States, 720 F.2d 467,

469 (7th Cir. 1983).[9]  Accordingly, this Court recommends that the Privacy Act claim against

Astrue be dismissed.

      2.    Individual Claims Under The Privacy Act

The individual plaintiffs allege that the SSA violated the Privacy Act by failing to disclose

their records in the form requested.[10]  In order to state a claim under the so-called access

provisions of the Privacy Act, each plaintiff must show that: (1) a request for records was made;

(2) the request was denied; and (3) such a denial or failure to act was improper under the Privacy

Act.  5 U.S.C. § 552a(d)(1), (g)(1)(B), (g)(3)(A); Biondo v. Dept. of Navy, 928 F. Supp. 626, 631

(D.S.C. 1995).

As an initial matter, the SSA argues that the queries are not records under the Privacy Act.

---

[9]  Plaintiffs cite Diamond v. Federal Bureau of Investigation, 532 F. Supp. 216, 219-20
(S.D.N.Y.1981), and Nemetz v. Department of Treasury, 446 F. Supp. 102, 106 (N.D.Ill.1978),
for the proposition that the head of an agency is a proper party under the Privacy Act.  Docket
No. 22, p. 13.  However, the courts in Diamond and Nemetz relied on another case, Hamlin v.
Kelley, 433 F. Supp. 180, 181 (N.D.Ill.1977), in making their determination.  Hamlin considered
whether an agency head is the proper party under the Administrative Procedures Act.
Accordingly, this Court does not view Diamond and Nemetz as persuasive authority with respect
to the Privacy Act.  Nevertheless, the dismissal of the Commissioner, as opposed to the agency,
is a purely technical matter and does not affect the substance of Plaintiffs' claims.

[10]  Plaintiffs seek damages and injunctive relief for their Privacy Act claims.  If Plaintiffs
succeed on their denial of access claim, the only relief available is an order to the agency to
produce the improperly withheld records.  5 U.S.C. § 552a(g)(3)(A).  The court may order that
the agency pay the plaintiff attorneys' fees.  5 U.S.C. § 552a(g)(3)(B).  However, the Plaintiffs
cannot recover damages under the Privacy Act for this claim.

Docket No. 21, p. 11-12. This Court disagrees. A record under the Privacy Act "has a broad meaning encompassing at the very least any personal information about the individual that is linked to that individual through an identifying particular." Bechhoefer, 209 F.3d at 62 (internal quotation marks omitted). To qualify as a record, information must contain an individual's name or other identifying particular and be "about" the individual. Fisher v. NIH, 934 F. Supp. 464, 468 (D.D.C. 1996); Murray v. BOP, 741 F. Supp. 2d 156, 160 (D.D.C. 2010). As alleged in the Amended Complaint, the requested queries satisfy these criteria. See Amended Complaint, ¶¶ 30, 36, 42, 44, 49.

Furthermore, SSA's regulations and portions of its internal program instruction manual (the Program Operations Manual System or "POMS") also contemplate queries as records. For example, 20 C.F.R. § 401.95(a) provides that the SSA will not charge a copying fee in an instance where it "must copy the record in order to provide access to the record (e.g. computer printout where no screen reading is available)." POMS GN 03301.020 lists the MBR as an example of a record under the Privacy Act, and POMS GN 03340.005 states that the Privacy Act requires a federal agency to "[p]resent the record in an understandable format or with an explanation (e.g. provide a key for reading computerized reports)."

Having determined that the queries are records under the Privacy Act, the Court will examine each individual plaintiff's claim in turn.

      a.    Tracey Robinson

Plaintiffs allege that in October 2011, SSLG requested a DDSQ for Ms. Robinson from the Harrisburg, Virginia SSA field office. Amended Complaint, ¶ 91. Plaintiffs allege that the manager of the field office left SSLG a voice message stating that pursuant to the POMS, he

could not give out printed queries except in "unusual circumstances." Amended Complaint, ¶ 92. However, Plaintiffs allege that this manager also stated twice that "we'll be glad to give you what you need." Id. Ms. Robinson has failed to state a claim under the Privacy Act because she has not alleged that she was denied access to her information. Accordingly, this Court recommends that the District Court grant the Defendants' motion to dismiss Ms. Robinson's Privacy Act claim.

### b.    David Butterworth

SSLG alleges that it requested the MBR for Mr. Butterworth's dependents via a SSA-1696 from the Austin, Texas SSA field office in August 2011. Amended Complaint, ¶ 89. SSLG alleges that it received Mr. Butterworth's MBR two months later, but the field office did not provide the MBR for his dependents. Id. The notice accompanying the MBR instructed SSLG to contact the Hanover, MA field office for more information. Id. When SSLG did so, its request was "steadfastly refused." Id. Because the SSA refused to provide Mr. Butterworth with an MBR for his dependents,[11] Mr. Butterworth has stated a Privacy Act claim and this Court recommends that the District Court deny the Defendants' motion to dismiss Mr. Butterworth's Privacy Act claim.

### c.    Christina Brooks

SSLG alleges that the SSA Payment Center made a data entry error when it processed Ms. Brooks' MBR, which resulted in Ms. Brooks receiving $34,901 in benefits that she was not entitled to and subsequently spent. Amended Complaint, ¶ 51. SSGL alleges that "[s]ince SSLG's access to the MBRs was denied, SSLG could neither detect the error nor warn its client to avoid spending the erroneously paid Past Due Benefits." Id.

---

[11] The SSS has not contested Mr. Butterworth's ability to receive this information.

24

Ms. Brooks has failed to state a Privacy Act claim. She has not alleged that a specific request for her MBR was made and that SSA denied that request. Rather, the Amended Complaint appears to make a much more general allegation regarding the denial of multiple MBRs. In addition, the Court fails to see how SSA's alleged data entry error has violated Ms. Brook's rights under the Privacy Act. Ms. Brooks' actual injury, being overpaid, is properly addressed by an appeal of the SSA's decision and/or following SSA's procedures regarding a waiver of overpayment. Accordingly, this Court recommends that the District Court grant the Defendants' motion to dismiss Ms. Brooks' Privacy Act claim.

        d.    <u>Michael Shields</u>

The Amended Complaint's only substantial reference to Mr. Shields is contained in Paragraph 84. <u>See</u> Amended Complaint, ¶ 84 ("[T]he SSA's Field Office in Topeka, Kansas recently issued a written denial of SSLG's request for queries for plaintiff Michael Shields."). The Plaintiffs also attach a copy of the October 21, 2011 denial letter which states that the MBR "is not provided to the claimant." Amended Complaint, Exhibit D. Although the allegations regarding Mr. Shields are not expansive, the allegation and Exhibit D contain enough information to sufficiently state a claim that he was denied his records under the Privacy Act. Accordingly, this Court recommends that the District Court deny the Defendants' motion to dismiss Mr. Shields' Privacy Act claim.

        e.    <u>Matthew Friedman</u>

On December 20, 2010, SSLG alleges that it requested Mr. Friedman's DDSQ from the Cambridge, Massachusetts District Office using the SSA-1969 form. Amended Complaint, ¶ 90. On December 23, 2010, a SSA representative called SSLG and stated that it could not release a

query using only the SSA-1696 form and that an additional authorization would be required.  Id.

Mr. Friedman has not alleged that his request for information was denied; he only alleges

that he was required to use a specific type of authorization form.  Accordingly, Mr. Friedman has

failed to state a Privacy Act claim and this Court recommends that the District Court grant the

Defendants' motion to dismiss Mr. Friedman's Privacy Act claim.

F.     The Administrative Procedures Act Claim

Plaintiffs[12] allege that the SSA's failure to timely respond to SSLG and its clients' request

for information and their subsequent communications regarding the same constitutes "agency

action unlawfully withheld and unreasonably delayed" in violation of APA.  Amended

Complaint, ¶ 130.  Plaintiffs allege that SSA's conduct violates the APA because it is arbitrary,

capricious, an abuse of discretion, not in accordance with law and without observance of

procedure.  Id.  The Defendants seek dismissal of the APA claim on the basis that the APA does

not provide an independent grant of subject matter jurisdiction.[13]  Docket No. 21 at 14.  They

---

[12] As discussed, supra, this Court recommends that the District Court find that SSLG lacks standing to pursue an APA claim.  Nevertheless, to the extent the District Court disagrees with that finding, this Court addresses the merits of the APA claim made by all Plaintiffs.

[13] Judicial review is also limited to agency actions "made reviewable by statute and final agency action."  5 U.S.C. § 704; Fund for Animals, Inc. v. United States, 460 F.3d 13, 18 (D.C.Cir. 2006) ("whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable.").  At oral argument, Plaintiffs asserted that the SSA's decision to stop filling their requests for queries, despite their repeated requests for clarification, letters, and attempts to come to an agreement with the SSA, constitutes final agency action.  Plaintiffs' broad allegations, however, do not appear to challenge a discrete agency action.  The APA does not afford plaintiffs "wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made."  Lujan, 497 U.S. at 891.  Accordingly, Plaintiffs' APA claims are subject to dismissal for this reason as well.

argue that the Privacy Act and Social Security Act provide a statutory remedy for resolving Plaintiffs' grievances. Id. at 15.

The APA provides in pertinent part that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Such review is limited to cases seeking relief for other than money damages. Id. In addition to the money damages qualifier, Section 702 imposes a further condition: "Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." Id. Section 704 describes "actions reviewable" as follows: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

The Supreme Court has found that the APA does not provide an independent grant of subject matter jurisdiction permitting judicial review of federal agency actions. Califano v. Sanders, 430 U.S. 99, 105 (1977). Indeed, federal courts lack jurisdiction over APA challenges whenever Congress has provided another adequate remedy. Bowen v. Massachusetts, 487 U.S. 879, 903 (1988) (holding that "[section] 704 'does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures'"). Accordingly, a litigant cannot seek relief under the APA where adequate review procedures already exist because "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." Mittleman v. King, No. 93-1869, 1997 WL 911801 at * 4 (D.D.C. Nov. 4, 1997) (APA claim dismissed where Privacy Act provided remedy for relief).

27

Here, Plaintiffs seek both equitable relief and monetary damages. The Privacy Act provides for equitable relief when an agency refuses to provide records. See 5 U.S.C. §§ 552a(g)(3)(A) and (g)(4). The Privacy Act does not provide monetary damages for the type of violation alleged here. See 5 U.S.C. § 552a. The APA's waiver of sovereign immunity is similarly limited to suits that seek "relief other than money damages." 5 U.S.C. § 702; Sibley v. Ball, 924 F.2d 25, 28-29 (1st Cir. 1991); Biase v. Kaplan, 852 F. Supp. 268, 278 n.7 (D.N.J. 1994). Accordingly, the APA provides no relief to the Plaintiffs other than that which is provided by the Privacy Act. Further, because the Privacy Act provides a comprehensive system of review, this Court recommends that the District Court dismiss the APA claim for lack of jurisdiction.

G.    Equal Protection Claim

Plaintiffs assert that to the extent that the Privacy Act and the accompanying SSA regulations prohibit the release of printed queries, these laws and regulations violate, both on their face[14] and as applied, the Equal Protection Clause of the Fifth Amendment because "they deny SSLG and its clients an equal opportunity to access such queries while similarly situated law firms and client are provided access to them." Amended Complaint, ¶ 137. SSLG alleges that the SSA has treated more favorably its competitors Allsup and The Advocator Group. Amended

---

[14] Facial challenges to federal laws "impose a 'heavy burden' upon the parties maintaining the suit." Gonzales v. Carhart, 550 U.S. 124, 168 (2007) (citing Rust v. Sullivan, 500 U.S. 173, 183 (1991)); see also Sabri v. United States , 541 U.S. 600, 608-609 (2004) ("Facial challenges are best when infrequent" and "are especially to be discouraged."). That burden requires the litigant to show that "no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Thus, to succeed on a facial challenge, Plaintiffs must show that every conceivable application of the laws in question are unconstitutional. Because Plaintiffs have not made such a showing, any such facial claim is dismissed, and the Court analyzes herein the Plaintiffs' as-applied challenge.

Complaint, ¶¶ 97-99.  SSLG and its clients allege that they have suffered damages[15] as a result.

Amended Complaint, ¶ 138.

The Equal Protection Clause of the Fourteenth Amendment commands that "no State shall

deny to any person within its jurisdiction the equal protection of the laws, which is essentially a

direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne

Living Ctr., 473 U.S. 432, 439 (1985) (internal quotation marks omitted).  Although the Fifth

Amendment does not contain an equal protection clause, a classification that would be invalid

under the Fourteenth Amendment would also violate the due process requirement of the Fifth

Amendment.  See Johnson v. Robison, 415 U.S. 361, 366 n. 4 (1974).

Plaintiffs allege a selective treatment claim under the Equal Protection Clause.  Such a

claim requires proof that:

> (1) the person, compared with others similarly situated, was selectively treated;
> and (2) that such selective treatment was based on impermissible considerations
> such as race, religion, intent to inhibit or punish the exercise of constitutional
> rights, or bad faith intent to injure a person.

Rubinovitz v. Rogato 60 F.3d 906, 909-10 (1st Cir. 1995).  Although the Equal Protection Clause

is "usually deployed in cases involving . . . curtailment of personal constitutional rights (e.g.

racial discrimination) and ordinarily against generic distinctions made in statutes or regulations . .

. economic interests can also be projected."  Rectrix Aerodrome Centers, Inc. v. Barnstable

Municipal Airport Comm'n, 610 F.3d 8, 15 (1st Cir. 2010).

In order to state a claim, Plaintiffs must allege that similarly-situated persons were treated

---

[15] Although Plaintiffs allege they have suffered damages as a result of unconstitutional laws and regulations, they made clear at oral argument that they are only seeking injunctive relief for Counts VI and VII of the Amended Complaint.

differently in order to carry their "modest burden" under Rule 12(b)(6). Pagan v. Calderon, 448

F.3d 16, 35 (1st Cir. 2006). In addition, in order to be successful on a so called "class of one"[16]

discrimination claim, a plaintiff must show that he is similarly situated to the other, more favored

entities. Rectrix, 610 F.3d at 15. Plaintiffs must identify the favorably treated entities and

circumstances to "a high degree." Id. at 16. In other words, Plaintiffs must "first identify and

relate specific instances where persons situated similarly in all relevant respects were treated

differently, instances which have the capacity to demonstrate that [plaintiffs] were singled . . . out

for unlawful oppression." Buchanon v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis in

original). The test is "whether a prudent person, looking objectively at the incidents, would think

them roughly equivalent and the protagonists similarly situated." Barrington Cove, LP v. R.I.

Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001) (internal quotation marks and citations

omitted). "Exact correlation is neither likely nor necessary, but the cases must be fair congeners.

In other words, apples must be compared to apples." Id.

 Here, SSLG specifically alleges that one of its competitors, Allsup, Inc. continued to

receive third-party query information from SSA after SSA declined to provide such information

to SSLG. Amended Complaint, ¶ 97. SSLG further alleges that another competitor, The

Advocator Group, continues to receive volume third-party query information from SSA.

Amended Complaint, ¶ 99. While the allegations are lacking some specifics necessary to prove

its claim, in this context, such allegations appear to sufficiently state that SSLG is similarly

---

[16] Although SSLG and the individual plaintiffs seek to assert claims on behalf of
similarly situated individuals, the unifying factor is SSLG's contact with the SSA and the
provision of favorable treatment to SSLG's competitors. Accordingly, the Court views
Plaintiffs' claims as a "class of one."

situated to Allsup and The Advocator Group.

However, Plaintiffs must also state that the selective treatment was based on impermissible considerations, such as race, or based on malicious or bad faith intent to injure a person. Where, as here, a plaintiff is not relying on "typical" impermissible categories, "he must show that he was intentionally treated differently from others similarly situated, that no rational basis exists for that difference in treatments, and that the different treatment was based on malicious or *bad faith* intent to injure." Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004) (emphasis in original).[17] A malice/bad faith test, when applied to a defendant's conduct in the context of a "class of one" equal protection claim, is "an exceptionally deferential" standard. Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 104 (1st Cir. 2002). Moreover, the malice/bad faith standard is very high and must be "scrupulously met." Rubinovitz, 60 F.3d at 911. The First Circuit has required proponents of such equal protection claims to establish a "gross abuse of power, invidious discrimination or fundamentally unfair procedures." Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000).

Plaintiffs have not met that standard. They have not alleged that the SSA acted with "the intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure." Barrington Cove, LP, 246 F.3d at 7; see also Harron v. Town of Franklin, 660 F.3d 531, 537 (1st Cir. 2011). Accordingly, Plaintiffs have failed to state an Equal Protection claim and this

---

[17] In Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006), Judge Gorton notes that some ambiguity exists after the Supreme Court's decision in Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) as to whether there is a bad faith component to the burden of proof for an Equal Protection claim where the plaintiff belongs to a "class of one." After reviewing the Supreme Court's decision and subsequent First Circuit cases, some of which are cited above, Judge Gorton concludes that a malice/bad faith standard does apply in such cases. This Court does as well.

Court recommends that Count VI of the Amended Complaint be dismissed.

    H.    <u>Due Process Claim</u>

    Plaintiffs assert that to the extent that the Privacy Act and regulations prohibit the release

of printed SEQY, DDSQ, and MBR queries, these laws and regulations on their face and as

applied violated the Due Process Clause of the Fourteenth[18] Amendment because "they deny

SSLG and its clients an equal opportunity to access such queries while similarly situated law

firms and clients are provided access to them and therefore deny SSLG's clients due process with

respect to their claims as adjudicated by the SSA." Amended Complaint, ¶ 140.  SSLG and its

clients allege that they have suffered damages as a result.  Amended Complaint, ¶ 141.

    Due process requires that no government shall deprive any person of "life, liberty or

property without due process of law." This clause has been interpreted as imposing two separate

limits on government action, usually called "procedural due process" and "substantive due

process." Procedural due process refers to the adequacy and fairness of the procedures that the

government must follow before it deprives a person of a protected interest.  <u>See</u>, <u>e.g.</u>, <u>Fuentes v.</u>

<u>Shevin</u>, 407 U.S. 67, 80-82 (1972); <u>Pittsley v. Warish</u>, 927 F.2d 3, 6 (1st Cir. 1991).  Substantive

due process refers to whether the government has an adequate reason for taking a person's

protected interest.  <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986).  In any event, both types of

due process involve some of the same elements – namely there has (1) been a deprivation of (2)

life, liberty or property.  As the Supreme Court has stated: "[t]he first inquiry in every due process

challenge is whether the plaintiff has been deprived of a protected interest in 'property' or

---

    [18] As a technical matter, the Fourteenth Amendment applies to state governments and the
Fifth Amendment applies to the federal government.

'liberty' . . . [o]nly after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." Amer. Mfgr Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999).

Here, Plaintiffs arguably are pursuing separate Due Process claims for the individuals and for SSLG itself. Plaintiffs fail to state a Due Process claim on either theory. With respect to the individuals, Plaintiffs have failed to allege a deprivation. While they correctly assert the continued receipt of social security benefits may be a protected property interest, they have not alleged any deprivation of that interest. Plaintiffs Robinson, Butterworth, Brooks,[19] and Shields are alleged to be current SSA beneficiaries. Amended Complaint, ¶¶ 2, 3, 4, and 5. Plaintiff Friedman is identified as a claimant and there are no allegations regarding a denial of benefits. Amended Complaint, ¶ 4. Accordingly, the individual plaintiffs fail to state a claim for a Due Process violation.

Construing SSLG's claim liberally, it is attempting to state a deprivation of its economic interests in providing a service to disability carriers as a result of SSA's refusal to fill its volume record requests. In order to prevail against a motion to dismiss its Due Process claim, the complaint must allege that SSA deprived SSLG of a cognizable property interest. Barrington Cove LLP, 246 F.3d at 8-9. A plaintiff must allege something more than either an "abstract need or desire for the government benefit or a mere unilateral expectation that the plaintiff deserves it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Here, SSLG has not adequately plead that its interest in the continued receipt of a particular type of document from the SSA is a protected

---

[19] Plaintiffs allege that the failure by SSA to produce requested records resulted in an overpayment to Ms. Brooks. Amended Complaint, ¶ 51. Plaintiffs have provided no legal authority that such overpayment in and of itself constitutes a deprivation of a protected interest.

interest for purposes of Due Process protection. Indeed, its legal memoranda opposing dismissal of the complaint are devoid of any such argument. Accordingly, SSLG has failed to state a claim for a Due Process violation and this Court recommends that Count VII of the Amended Complaint be dimissed.

    I.    <u>Mandamus</u>

    Pursuant to 28 U.S.C. § 1361, Plaintiffs seek an order of mandamus compelling the Commissioner to provide query information under the Privacy Act and to fulfill SSLG's volume requests. Amended Complaint, ¶¶ 131-135; Docket No. 22 at p. 12. To qualify for mandamus relief under Section 1361, Plaintiffs must show that they have "a clear right to the relief sought, ha[ve] no other adequate remedy, and that there is a clearly defined and peremptory duty on the part of the defendants . . . to do the act in question." <u>Georges v. Quinn</u>, 853 F.2d 994, 995 (1st Cir. 1988). Further, "[t]he mandamus remedy is available only under exceptional circumstances of clear illegality." <u>Cervoni v. HEW</u>, 581 F.2d 1010, 1019 (1st Cir. 1978).

    Plaintiffs have failed to sufficiently state a claim for mandamus relief. Although the individuals arguably have a clear right to their own information under the Privacy Act, they have failed to establish that the Privacy Act does not provide them with an adequate remedy. As detailed <u>supra</u>, the Privacy Act and its regulations provide a process by which individuals may obtain their information and appeal any denial of access to information. <u>Wilson v. Secretary of Health & Human Services</u>, 671 F.2d 673, 679 (1st Cir. 1982) (affirming dismissal of mandamus claim because an alternative remedy through SSA administrative proceedings was available). Regarding volume requests, Plaintiffs have not provided any support that SSA has a "clearly defined and peremptory duty" to provide them with volume requests, particularly where its own

34

guidelines prohibit it. See POMS 03305.004. Accordingly, this Court recommends that the District Court dismiss Plaintiffs' claim for mandamus relief contained in Count V of the Amended Complaint.

## VI.   Conclusion

For the foregoing reasons, this Courts recommend that the District Court grant in part and deny in part the Defendants' motion to dismiss. Specifically, this Court recommends that the District Court: (1) dismiss SSLG, Brooks, and Friedman's Privacy Act claims; (2) dismiss Plaintiffs' Privacy Act claims against Commissioner Astrue; and (3) dismiss the Plaintiffs' Administrative Procedures Act, Equal Protection, Due Process, and Mandamus claims.[20]

## VII.   Review by District Judge

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

---

[20] The Defendants did not seek dismissal specifically of the Declaratory Judgment Act or Equitable Relief counts in the Amended Complaint.

35

Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d

343 (1st Cir.1993).

/s/ Jennifer C. Boal_____
JENNIFER C. BOAL
United States Magistrate Judge

36